IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALFRED SHINARD, #274483                 *
        Plaintiff,
        v.                              *   CIVIL ACTION NO. RWT-14-1501

WEXFORD HEALTH SERVICES, INC., *et al.**
        Defendants.
                              *****

## MEMORANDUM OPINION

I.    BACKGROUND

Alfred Shinard ("Shinard"), presently housed at the North Branch Correctional Institution ("NBCI"), filed a civil rights complaint against Defendant Wexford Health Services, Inc. ("Wexford") and Dr. Ava Joubert seeking money damages. He alleges that in 2012, while confined at the Jessup Correctional Institution, he received a magnetic resonance imaging test ("MRI") at Bon Secours Hospital ("BSH") in Baltimore, Maryland and was informed that he had herniated disks and degenerative disk disease. He acknowledges that soon after the diagnosis he received an epidural injection, was prescribed Ultram and Neurontin for pain, and received a consult for physical therapy. The thrust of the Complaint goes to Shinard's claim that after his transfer to NBCI in July of 2013, he was denied the pain medication and physical therapy with traction previously prescribed by the hospital physician and was placed on another pain medication, Torodol, without a physical examination. ECF No. 1. He claims that he continues to suffer from "chronic severe" pain in his back and numbness in his leg. *Id.*

Defendants have filed a Motion to Dismiss. ECF No. 18. Plaintiff has filed an Opposition and a Motion for Leave to Amend his Complaint. ECF Nos. 26 & 27. Defendants have filed a Reply. ECF No. 31. In addition, Shinard has filed Motions for Preliminary

Injunction and to Appoint Counsel.  ECF Nos. 28, 29, & 33.  Defendants oppose Shinard's request for emergency relief.  ECF No. 32.

II. STANDARD OF REVIEW

Defendants have filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).  Where matters outside of the pleadings, such as the medical record supplied by Defendants, are presented to and not excluded by the Court, the motion to dismiss under Rule 12(b)(6) must be treated as one for summary judgment under Rule 56, and all parties must be given the opportunity to present all material that is pertinent to the motion.  *See Waugh Chapel S., LLC v. United Food & Commercial Workers Union Local 27*, 728 F.3d 354, 360 (4th Cir. 2013).  The Court deems it appropriate to consider the extraneous materials, as they are likely to facilitate disposition of this case.  Accordingly, the Motion shall be treated as a motion for summary judgment.

Summary Judgment is governed by Fed. R.Civ. P. 56(a), which provides, in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original).  In resolving the motion, the court should "view the evidence in the light most favorable to ... the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 645, 645 (4th Cir. 2002). However, the "party opposing a properly supported

2

motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). Moreover, the court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 778–79 (4th Cir. 1993) (internal quotation marks omitted).

III. DISCUSSION

Defendants assert that Plaintiff has failed to show that they exhibited deliberate indifference to his medical needs because he was provided with examinations, prescription pain medications, and treatment related to his back pain. ECF No. 18. They refer to the medical record, which shows that during 2013 and into 2014, Plaintiff was prescribed Neurontin,[1] Ultram[2] and Naproxen.[3] *Id*. Ex. B at pp. 10-11, 15-16, & 19-22. In addition, physician's orders were written for weight and heavy lifting restrictions and for a renewal of Plaintiff's cane. ECF No. 18, Ex. B at pp. 15-16. On March 14, 2014, Dr. Joubert ordered an x-ray of Plaintiff's spine and Plaintiff was approved for another round of physical therapy. *Id*., Ex. B at pp. 27-28. Plaintiff received a physical therapy evaluation on March 25, 2014 and began his sessions soon after. *Id*., Ex. B at pp. 30, 35, 37 & 40.

---

[1] Neurontin (gabapentin) is an anti-epileptic medication, also called an anticonvulsant. It effects chemicals and nerves in the body that are involved in the cause of seizures and some types of pain. http://www.drugs.com/neurontin.html.

[2] Ultram (tramadol) is a narcotic-like pain reliever. It is used to treat moderate to severe pain. http://www.drugs.com/ultram.html.

[3] Naproxen is a non-steroidal anti-inflammatory drug. It works by reducing hormones that cause inflammation and pain in the body. It is used to treat pain or inflammation caused by conditions such as arthritis, ankylosing spondylitis, tendinitis, bursitis, gout, or menstrual cramps. http://www.drugs.com/naproxen.html.

On April 10, 2014, Dr. Joubert discussed Plaintiff's Torodol[4] injections with him and Plaintiff voiced his understanding as to the plan of care, which included Torodol injections for a few days of pain relief. *Id.*, Ex. A at pp. 1-2. Further, Plaintiff's prescriptions for Neurontin and Ultram were discontinued on April 10, 2014, because of his repeated reports in January, February, March, and April of 2014, that his pain was worsening in spite of these medications and that they were not effective in relieving his pain. *Id.*

On April 24, 2014, Plaintiff was seen by Nurse Practitioner Clark for continued back pain. *Id.*, Ex. C at pp. 41-45. She noted that Plaintiff had been given multiple epidural injections and that multiple pain medications, including narcotics, non-steroidal anti-inflammatory drugs ("NSAIDS"), anti-muscle spasm drugs and Neurontin were unsuccessful. She observed that Plaintiff had completed another course of physical therapy on April 22, 2014. A consult was ordered with a neurosurgeon. *Id.*

On April 29, 2014, Plaintiff was seen by Nurse Kimberly Martin for back pain and leg numbness. *Id.*, Ex. D at pp. 46-47. Plaintiff indicated that Neurontin was "the only thing that helps [him]" and that he wanted it reordered. The prescriptions for Neurontin and Ultram were renewed. ECF No. 18, Ex. E at pp. 49 & 51.

In his Opposition, Plaintiff claims he was told that he would never receive Ultram at NBCI, but concedes that he was placed on a low dosage of Ultram and Neurontin after his arrival in 2013. ECF No. 27 at 2. He affirms that he informed staff that the medication "was not helping too much with the pain" and a consult for physical therapy was issued. *Id.* Plaintiff maintains that the physical therapy occurred without mechanical traction, which is necessary for his disk problems. *Id.* at 3.

---

[4] Toradol a non-steroidal anti-inflammatory drug. It works by reducing hormones that cause inflammation and pain in the body. It is used short-term (5 days or less) to treat moderate to severe pain, usually after surgery. It is used alone or in combination with other medicines. http://www.drugs.com/toradol.html.

With regard to the claims raised against Wexford and Dr. Joubert, the Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to his serious medical needs.[5] *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The subjective component requires subjective recklessness in the face of the serious medical condition. *Id.* at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter…becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant

---

[5] A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve,* 535 F.3d 225, 241 (4th Cir. 2008).

actually knew at the time. *Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001). Inmates do not have a constitutional right to the treatment of their choice, *see Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986), and disagreements between medical staff and an inmate over the necessity for or extent of medical treatment do not rise to a constitutional injury. *See Estelle*, 429 U.S. at 105-06.

It can be safely assumed that Plaintiff's herniated disk and degenerative disk disease constitute serious medical problems. Thus, the question becomes whether Defendants displayed deliberate indifference to Plaintiff's conditions. Plaintiff's Complaint acknowledges that while at JCI he underwent an MRI, and was prescribed pain medications and physical therapy. The record presented to the Court shows that while at NBCI, Plaintiff has been prescribed the same pain medication, Torodol injections, and physical therapy. In addition, physician's orders were issued which restricted his weight bearing and renewed his use of a cane. He has been seen by a number of nurses, physician's assistants and physicians on site and has been referred to an orthopedic surgeon. While Plaintiff may be dissatisfied with the course of treatment and the health care professionals he saw, he has been given extensive care regarding his established back

conditions, care which easily meets the minimum constitutional requirements. No Eighth Amendment violation has been demonstrated.[6]

Plaintiff asks this Court to issue a preliminary injunction against Defendants. ECF No. 28. He seemingly claims that Defendants are not prescribing pain medication or physical therapy with mechanical traction and he seeks an updated MRI and neurological and orthopedic reports. He claims that he has to rely on a walking cane for ambulation. *Id.*

The party seeking a preliminary injunction must demonstrate: (1) that he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

The *Winter* standard requires the district court to find that the party seeking the injunction has made a "clear showing" that he is likely to succeed on the merits. *Winter,* 555 U.S. at 22. Because he has failed to make out an actionable Eighth Amendment claim, Plaintiff has clearly failed to show that he will succeed on the merits of his case. Injunctive relief is not warranted and the Motion shall be denied.

---

[6] To the extent Plaintiff seeks leave to file an Amended Complaint naming Janice Gilmore as the Supervisor of Wexford Health Source, Inc. (*see* ECF No. 26), his Motion shall be denied for reasons articulated by this Court. Further, there is no showing that Gilmore was personally involved in Plaintiff's medical care while incarcerated at NBCI. Plaintiff has provided no evidence demonstrating supervisory liability on the part of Gilmore. *See* S*haw v. Shroud*, 13 F.3d 791, 799 (4th Cir. 1994).

IV.     CONCLUSION

For the aforementioned reasons, Defendants' motion, construed by the Court as a motion for summary judgment, is granted.  In light of this decision, Plaintiff's Motions to Appoint Counsel shall be denied.  A separate Order follows.


Dated: February 20, 2015                                      /s/
                                                    ROGER W. TITUS
                                          UNITED STATES DISTRICT JUDGE